IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

| | |
|---|---|
| INDEMNITY INSURANCE CORP. RISK RETENTION GROUP, | * |
| Plaintiff, | * |
| v. | * CIVIL NO.: WDQ-11-1113 |
| AXIOM INSURANCE MANAGERS, LLC | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Indemnity Insurance Corporation Risk Retention Group ("Indemnity") sued Axiom Insurance Managers, LLC ("Axiom") for breach of contract. For the following reasons, Axiom's motion to transfer venue will be granted, and Indemnity's motion for a preliminary injunction will be denied.

I. Background

Indemnity, a Maryland corporation, is an insurer of "hospitality and entertainment" businesses, including "nightclubs, restaurants and taverns." Compl. ¶ 7. Axiom is an Illinois managing general insurance agent. *Id.* ¶ 8. Axiom sells insurance policies from companies "in direct competition with Indemnity." *Id.*

A. The Settlement Agreement

In February 2010, Indemnity and Axiom negotiated a Settlement Agreement to resolve several lawsuits in Florida and

Illinois. *Id.* ¶ 1. The Settlement Agreement was negotiated in the United States District Court for the Northern District of Illinois by United States Magistrate Judge Susan Cox. Amend. Compl., Ex. A. at § 2. It provided that Judge Cox would "retain jurisdiction for enforcement of the settlement terms." *Id.*

The Settlement Agreement also contained this confidentiality clause:

> Other than as expressly permitted . . . or otherwise required by law, the Parties agree that they will not, . . . disclose or cause to be disclosed the terms of this Agreement or any documents or discovery produced in this case, or otherwise provide any information regarding the terms of this Agreement . . . The Parties further agree that the stipulated protective order that was entered by the Court in the case styled: *Axiom Managers Agency, LLC v. Indemnity Insurance Corporation of D.C., Risk Retention Group, and Indemnity Reinsurance Corporation of D.C.* Case No. 09-4961 (N.D. Ill.), shall remain in full force and effect until all Parties expressly agree in writing to the contrary . . .

*Id.* at § 8.a

The Settlement Agreement further provided that:

> [The parties] will not, directly or indirectly, through means of oral, written, electronic or other communication, make, publish or repeat any statement or information regarding any other Party which constitutes defamation or disparagement. Further, Axiom will make no characterizations or representations to third parties about the status of [Indemnity's] financial condition prior to the date of this Agreement, including but not limited to the validity of [Indemnity's] A.M. Best rating, [its] size rating or the assessability of [its] policies amongst its policy holders.

*Id.* at § 8.b

2

The parties agreed that if sections 8.a or 8.b of the Settlement Agreement were breached, "the non-breaching party [would] be entitled to the greater of its actual and consequential damages associated with the breach or liquidated damages in the amount of One Hundred Thousand Dollars ($100,000)." *Id.* at § 8.c.

On December 22, 2010, Axiom filed a motion to enforce the Settlement Agreement with Judge Cox, alleging that Indemnity had breached the Agreement by making defamatory statements about Axiom's underwriting of certain insurance policies to Liberty Mutual, one of Axiom's business partners. Compl., Ex. C. On January 6, 2011, Indemnity filed a counter-motion alleging that Axiom had breached the Settlement Agreement. Def.'s Opp'n Mot. Preliminary Inj. 5. Both parties withdrew their motions when Judge Cox ruled that although the Settlement Agreement stated she would retain jurisdiction to enforce it, jurisdiction had not been properly preserved in her order dismissing the case after settlement. *Id.*

B. Subsequent Litigation

1. Other Litigation

On March 7, 2011, Indemnity sued Axiom in the 162nd Judicial District of Texas alleging defamation and violations of the Texas Insurance Code (the "Texas suit"). Discovery has begun in that case. *See id.*, Ex. A.

On May 3, 2011, Axiom sued Indemnity in the Northern District of Illinois for various claims, including abuse of process arising from the Texas suit, and breaches of the Settlement Agreement arising from Indemnity's disparaging comments to Liberty Mutual which it had earlier raised before Judge Cox. *Id.*, Ex. B. That suit (the "Illinois suit") is pending before United States District Judge Amy St. Eve. *Id.*

2. This Suit

On April 29, 2011, Indemnity sued Axiom in this Court for breach of the Settlement Agreement. ECF No. 1. Indemnity alleged that on April 25, 2010, John Black, Axiom's then co-owner and executive vice president, violated section 8.b of the Settlement Agreement by emailing to six "insurance industry professionals" and a "New York Times reporter" "character-izations and representations about Indemnity's financial condition as it existed prior to the date of the Settlement Agreement" (the "first Black email"). Compl. ¶ 16.[1] Indemnity also alleged that Axiom had breached the Settlement Agreement's confidentiality clause by failing to file its December 22, 2010 motion to enforce the Settlement Agreement under seal. *Id.* ¶ 40.

---

[1] The first Black email states Indemnity is a "corrupt insurer" and has produced "fraudulent financial statement filings, forg[ed] a reinsurance agreement" and forged a letter of credit. Compl., Ex. B. In that email, Black also states that Axiom had engaged in a "pattern of fraud." *Id.*

4

On June 30, 2011, Indemnity filed a "consent motion for leave to amend" its complaint. ECF No. 17. The amended complaint alleges that Axiom has further violated confidentiality by filing additional unsealed documents in the Illinois and Texas suits. Amend. Compl. ¶¶ 40-46.

It also alleges that on May 20, 2011, Black, who is no longer with Axiom, emailed Indemnity's attorneys that Axiom's counsel, Richard Winter, had provided a "Highly Confidential" letter of credit produced by Indemnity during negotiations of the Settlement Agreement to Dragan Djordjevic, Axiom's president and CEO (the "second Black email"). *Id.* ¶¶ 23-29.[2] On May 23, 2011, Indemnity filed a motion in the Illinois suit to disqualify Winter as Axiom's counsel. Amend. Compl., Ex. E.

On June 3, 2011, Axiom moved to transfer venue of this case to the Northern District of Illinois. ECF No. 7. On June 27, 2011, Indemnity moved for a preliminary injunction directing Axiom to stop violating the Settlement Agreement by "making any representations regarding Indemnity's financial condition" or "disseminating confidential information." ECF No. 12. On June 29, 2011, the Court held a conference with the parties and set a briefing schedule for the motions to transfer venue and for a preliminary injunction.

---

[2] Indemnity has not provided this Court with a copy of the second Black email.

5

II. Analysis

   A. Axiom's Motion to Transfer Venue

      1. Standard of Review

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The moving party has the burden to show that transfer to another forum is proper. *Lynch v. Vanderhoef Builders*, 237 F. Supp. 2d 615, 617 (D. Md. 2002).

In considering a motion to transfer, the Court first asks whether the action could have been brought in the transferee district; there is no dispute that the Northern District of Illinois would be a proper venue for this suit. *See Mamani v. Bustamante*, 547 F. Supp. 2d 465, 469 (D. Md. 2008).[3] The Court balances: "(1) the weight accorded the plaintiff's choice of venue, (2) witness convenience and access, (3) convenience of the parties, and (4) the interest of justice." *Lynch*, 237 F. Supp. 2d at 617. The decision to transfer turns on the "particular facts" of the case, and is committed to the Court's discretion. *Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp. 2d 627, 632 (E.D. Va. 2006); *Lynch*, 237 F. Supp. 2d at 617. Unless the

---

[3] Transfer is proper if the transferee court is a proper venue and has personal jurisdiction over each defendant. *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 630 (E.D. Va. 2003).

6

balance of factors is "strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Collins v. Straight, Inc.*, 748 F.2d 916, 921 (4th Cir. 1984).

    2.   Axiom's Motion

Axiom has moved to transfer venue to the Northern District of Illinois because the majority of witnesses are located "near Illinois," it is convenient for both parties, and transfer would serve the interests of justice by avoiding duplicative litigation. Def.'s Mot. Transfer Venue 4-5. Indemnity contends that its choice of venue should not be disturbed because Maryland is its home state, and Axiom has not shown that the transfer would promote witness convenience. Pl.'s Opp'n Mot. Transfer Venue 1-2.

    a.   Weight Accorded Indemnity's Choice

Indemnity argues that its choice of venue is entitled to great weight because Maryland is its principal place of business, and it has sustained harm here. *Id.* 6. Axiom contends that Maryland is Axiom's "second choice" of venue because it initiated the Texas suit first, and the events giving rise to the alleged breach of the Settlement Agreement all occurred outside Maryland. Def.'s Reply Mot. Transfer Venue 1-2.

"Although a plaintiff's choice of forum is ordinarily accorded considerable weight, that weight is significantly

7

lessened when none of the conduct complained of occurred in the forum selected by the plaintiff and said forum has no connection with the matter in controversy." *Lynch v. Vanderhoef Builders*, 237 F. Supp. 2d 615, 617 (D. Md. 2002). Here, the only connection between Maryland and the case is that this is Indemnity's principal place of business. None of the events giving rise to the litigation occurred here,[4] and although Idemnity's "choice of Maryland as a forum is entitled to some deference, that deference is limited." *Id*.

        b. Witness Convenience and Access

"Mere assertions of inconvenience or hardship, without more, are insufficient" to sustain a motion to transfer venue; instead, "to satisfy its burden the defendant should submit, for example, 'affidavits from witnesses and parties explaining the hardships [it] would suffer if the case were heard in the plaintiff's chosen forum.'" *Jones v. Koons Auto., Inc.*, 752 F. Supp. 2d 670, 681 (D. Md. 2010)(quoting *Dow v. Jones*, 232 F. Supp. 2d 491, 499 (D. Md. 2002))(alteration in original).

---

[4] The Settlement Agreement was negotiated in Illinois, and the alleged breaches of the confidentiality clause occurred there and in Texas. The first Black email was sent from Illinois or Wisconsin, and Indemnity has not alleged that any of the recipients were in Maryland. *See* Compl. ¶¶ 17-18; Amend. Compl. ¶¶ 40-46; ECF No. 7 at 5.

Axiom contends that the potential non-party witnesses[5] are located in Wisconsin, Nevada, California, South Carolina, New Jersey, New York, and Missouri, and a "majority" of the witnesses are near Illinois. Def.'s Reply Mot. Transfer Venue 3. It contends that some of these witnesses have been subpoenaed in the Texas suit, and will also be witnesses in the Illinois suit; thus, transfer to Illinois would prevent the witnesses from traveling to a third forum. Id. 4.

In support of its motion, Axiom has provided copies of subpoenas for the production of documents and notices of intent to depose witnesses in Texas, which demonstrate that some issues for discovery in Texas are likely to be subject to discovery here. However, Axiom has not explained how the Texas witnesses will overlap with the Illinois case, and on the current record it is unclear that transfer would prevent those non-party witnesses from traveling to a third forum. Because Axiom has not properly supported its argument as to this factor, it has not shown that witness convenience favors transfer.

c. Convenience of the Parties

"[W]hen plaintiffs file suit in their home forum, convenience to parties rarely, if ever, operates to justify

---

[5] "Inconvenience to party-witnesses is given less weight because they are presumed to be more willing to travel to testify than non-party witnesses." *Laureate Educ., Inc. v. Megahed*, 2010 WL 2651895, at *10 (D. Md. July 1, 2010).

transfer." *Bd. of Trustees, Sheet Metal Workers Nat'l Fund v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1259 (E.D. Va. 1988). But here, transfer from this district—Indemnity's home forum—to the Northern District of Illinois—Axiom's home forum—would not merely "shift the balance of inconveniences" between the parties. *Id.* Indemnity has already sued Axiom in Texas; maintaining this action here would require Axiom to defend itself against Indemnity in two locations outside its home. If the case is transferred, each party would be required to litigate in a venue not of its choosing. This factor favors transfer.

        d.   Interest of Justice

The interest of justice "encompasses public interest factors aimed at systematic integrity and fairness," including "[j]udicial economy and avoidance of inconsistent judgments." *Samsung Elecs. Co., Ltd. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 721 (E.D. Va. 2005). Systematic integrity "must also necessarily take account of a party's attempt to game the federal courts through forum manipulation." *Id.* This factor is not served by permitting parties to circumvent the "force and effect" of prior litigation. *Id.*

Axiom argues that this factor favors transfer because: (1) the parties intended that Judge Cox retain jurisdiction over the Settlement Agreement and enforce the Settlement Agreement in

10

Illinois; (2) the Illinois court is familiar with the issues and parties, and the laws of Illinois which govern the Settlement Agreement; and (3) transfer would avoid duplicative litigation because some claims in the pending Illinois suit also arise from the Settlement Agreement. Def.'s Reply Mot. Transfer Venue 4-5.

When related actions are pending in the transferee forum, the interest of justice generally "weigh[s] heavily" in favor of transfer because "litigation of related claims in the same tribunal facilitates efficient, economical and expeditious pre-trial proceedings and discovery." *U.S. Ship Mgmt., Inc. v. Maserk Line, Ltd.*, 357 F. Supp. 2d 924, 937-38 (E.D. Va. 2005). When related actions are pending, "[j]udicial economy and the interest of justice favor a venue which has already committed judicial resources to the contested issues and is familiar with the facts of the case" and the applicable law. *Samsung*, 386 F. Supp. 2d at 722; *Plant Genetic Sys., N.V. v. Ciba Seeds*, 933 F. Supp. 519, 527 (M.D.N.C. 1996).

Here, the interests of justice strongly favor transfer. The Settlement Agreement is a basis of Axiom's complaint in the Illinois suit, and resolution of Axiom's breach of Settlement Agreement claim against Indemnity will require the Illinois court to resolve issues that are common to this suit.[6] That the

---

[6] For example, both cases will require interpretation of the Settlement Agreement's ban on "disparagement" and raise issues about the scope of the confidentiality clause. *See Samsung*, 386

11

Settlement Agreement is governed by Illinois law, and the parties have a substantial history of litigation in Illinois, which weighs in favor of transfer.

Perhaps most importantly, the Settlement Agreement reflects the parties' intent to litigate enforcement issues in Illinois.[7] Indemnity does not dispute that a mere technicality prevented Judge Cox from hearing Axiom's first motion to enforce the Settlement Agreement, and did not complain while the case was before Judge Cox that Illinois was an inconvenient forum. Indemnity's argument that transfer to Illinois would be "fundamentally unfair" because it was "the first to file its claims for breach of the Settlement Agreement" is inaccurate given that Axiom undisputedly filed its motion to enforce the Settlement Agreement months before Indemnity sued here.

On balance, transfer to the Northern District of Illinois will conserve judicial resources and serve the intent of the parties as embodied in the Settlement Agreement. Indemnity's choice of this venue—although entitled to some weight—is

---

F. Supp. 2d at ("There is no doubt that the prospect of inconsistent judgments is a concern which should be taken into account in weighing the interest of justice.").

[7] See Sapp v. FirstFitness Int'l, Inc., 2009 WL 2997624, at *4 (M.D. Ga. 2009)(interests of justice strongly favored transfer to Texas court which had "explicitly retained jurisdiction" to enforce the terms of a settlement agreement between the parties, which the plaintiff had sought to enforce in Georgia).

outweighed by the other considerations.  Axiom's motion to transfer venue will be granted.

    B.  Indemnity's Motion for Preliminary Injunctive Relief

        1.  Standard of Review

A preliminary injunction is an "extraordinary remed[y] involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances." *Microstrategy, Inc., v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001). Because issuing a preliminary injunction requires that a district court, acting on an incomplete record, order a party to act or refrain from acting in a certain way, "[t]he danger of a mistake in this setting is substantial." *Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 693-94 (4th Cir. 1994).

To obtain a preliminary injunction, the movant must demonstrate that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities favors it; and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008); *The Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 346 (4th Cir. 2009), *vacated on other grounds*, --- U.S. ---, 130 S.Ct. 2371 (2010). The movant must show more than a "grave or serious question for litigation"; instead, it bears the "heavy burden" of making a

"*clear showing* that it is *likely* to succeed at trial on the merits." *Real Truth,* 575 F.3d 347-51. Courts have declined to issue preliminary injunctions when there are significant factual disputes. *See, e.g., Allegra Network LLC v. Reeder,* 2009 WL 3734288, at *3 (E.D. Va. Nov. 4, 2009).

      2.    Indemnity's Motion

Indemnity's motion requests a preliminary injunction prohibiting Axiom from "making any representations regarding Indemnity's financial condition" or "disseminating confidential information . . . in violation of the Settlement Agreement." Pl.'s Mot. Preliminary Inj. 2. In its reply, Indemnity requests that Axiom be restrained from "making any characterizations [about] Indemnity's finances including that Indemnity is insolvent, denigrating the letter of credit, or otherwise disparaging Indemnity's financial condition." Pl.'s Reply 14.

Indemnity contends that it is likely to succeed on the merits of its breach of the Settlement Agreement claims because: (1) Axiom's unsealed court filings are a "blatant" violation of the confidentiality clause, (2) the first Black email "clearly denigrates" Indemnity's financial condition, and (3) it is undisputed that Winter provided the "Highly Confidential" letter of credit to Djordjevic. Pl.'s Mot. Preliminary Inj. 12-13. Indemnity contends that it will be irreparably harmed without an injunction because it will "suffer . . . loss of market

14

presence, revenue, and reputation." *Id.* at 11. Axiom argues that Indemnity is not likely to succeed on the merits, and has shown no likelihood of irreparable harm justifying an injunction. Def.'s Opp'n Preliminary Inj. 9.

Leaving aside the issue of success on the merits, Indemnity has shown no need for an injunction based on the first Black email. It is undisputed that Black is no longer employed by Axiom, and his actions in April 2010—which may have violated the Settlement Agreement—do not require that Axiom be restrained now. Although Indemnity asserts that without an injunction it will suffer irreparable harm to its goodwill, it has not provided evidence of a single instance when the Black email—sent over a year ago—harmed its reputation. The alleged harm justifying a preliminary injunction must be actual and imminent.[8]

As to Winter's distribution of the letter of credit, Indemnity's likelihood of success on the merits of its breach of the Settlement Agreement claim is unclear. The amended complaint alleges that Winter violated § 8.b of the Settlement Agreement by giving Djordjevic the letter of credit. Amend. Compl. 23-26. Section 8.b prohibits Axiom from making "defamat[ory] or disparag[ing]" comments about Indemnity's financial condition, or from making representations about its

---

[8] *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 530 (4th Cir. 2003) (irreparable harm cannot be "remote nor speculative," but must be "actual and imminent").

15

pre-February 2011 financial status "to third parties". Winter's distribution of the letter of credit to Axiom's CEO was not to a "third party."

Finally, Axiom's filing of unsealed court documents does not provide a basis for extraordinary injunctive relief. Like the first Black email, several of the alleged breaches occurred over a year ago, but Indemnity has been unable to identify any resulting harm, and concedes that it can ask the Texas and Illinois courts to place these documents under seal. *See* Pl.'s Reply Preliminary Inj. 7. "At the preliminary injunction stage, irreparable harm consists of harm that could not be sufficiently compensated by money damages." *MicroAire Surgical Instruments, LLC v. Arthrex, Inc.*, 726 F. Supp. 2d 604, 634 (W.D. Va. 2010) (internal quotations marks and citation omitted). The Settlement Agreement contains a liquidated damages clause which entitles Indemnity to $100,000 for each violation of the Agreement.

Although Indemnity may have some likelihood of success on some its claims, the Court cannot issue injunctive relief. "The purpose of a preliminary injunction is to preserve the status quo pending resolution of the litigation . . . If the movant is not in imminent danger of suffering the asserted irreparable harm, then court intervention is not necessary." *Custom Dynamics, LLC v. Radiantz LED Lighting, Inc.*, 535 F. Supp. 2d

542, 553 (E.D.N.C. 2008) (denying motion for preliminary injunction enjoining defendant from "*further* defaming Plaintiff").[9] The record is devoid of any indication that Indemnity is faced with actual and imminent harm, and its motion will be denied.[10]

III. Conclusion

For the reasons stated above, Indemnity's motion for a preliminary injunction will be denied, and Axiom's motion to transfer venue will be granted. The case will be transferred to the United States District Court for the Northern District of Illinois.

_8/23/11_  
Date

_/s/ Quarles/_  
William D. Quarles, Jr.  
United States District Judge

---

[9] *Winter*, 555 U.S. at 22 ("Issuing a preliminary injunction based on a possibility of irreparable harm is inconsistent with [the] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing" of entitlement).

[10] The denial is without prejudice to Indemnity's ability to seek injunctive relief from the Illinois court.

17